UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **THIRD DEGREE FILMS,**<br><br>*Plaintiff,*<br><br>v.<br><br>**DOES 1 – 72**,<br><br>*Defendants.* | **Case No.: 1:12-cv-10760** |

RESPONSE TO SHOW CAUSE ORDER

## 1. Introduction.

On September 26, 2012, this Court ordered Plaintiff to show cause why Court should not exercise its discretion under Rule 21 to sever all of the Doe defendants but one, while permitting Plaintiff to refile against each of the defendants in separate actions. ECF No. 23.

The Court cites to a decision by Judge Spero of the Northern District of California:

> The copyright infringement claims did not arise out of the same transaction, occurrence or series of transactions or occurrence … because each defendant used the same ISP as well as some of the same P2P networks … [M]erely committing the same type of violation in the same way does not link defendants together for purposes of joinder.

*Hard Drive Productions, Inc. v. Does 1-188*, 809 F. Supp. 2d 1150, 1157 (N.D.Cal. 2011.

This response directly responds to the above citation and to why the infringement claims arise out of the same transaction or occurrence or series of transactions or occurrences. There are also other considerations that make joinder proper in this case, and Plaintiff will address those later in this response.

Importantly, the Plaintiff appreciates the opportunity provided by the Court, allowing the Plaintiff to show why joinder is proper here. The issue of maintaining multiple defendants in a single case is undoubtedly fraught with issues of concern, but is one of the most important

litigation tools Copyright holders have to enforce their rights.

## 2. Claims against Defendants arise out of the same transaction, occurrence, or series of transactions or occurrences because Defendants were apart of the same swarm.

Many courts have addressed the issue of joinder in the context of BitTorrent infringement litigation and have come to differing conclusions on the issue of joinder. *Cf. Third Degree Films, Inc. v. Does 1-178*, No. C 12-3858 (MEJ) (Order of August 29, 2012) (N.D. Cal. Aug. 29, 2012) *with Hard Drive Productions, Inc. v. Does 1-188*, 809 F. Supp. 2d 1150 (N.D. Cal. 2011); *see also MCGIP, LLC v. Does 1-149*, 2011 WL 3607666, at *3 (N.D. Cal. Aug. 15, 2011) (sample of recent decisions). As the Northern District of California Court noted in *Third Degree Films*, the question of joinder is "highly dependent on the information the plaintiff presented regarding the nature of the BitTorrent file-sharing protocol and the specificity of the allegations regarding the Doe defendants' alleged infringement of the protected work." No. C 12-3858, at *6.

In *Third Degree Films*, the Northern District of California court approved joinder of defendants in a situation identical to the case before the court. *See id.* at *7. In distinguishing the case with other cases severed by the Northern District of California, *Third Degree Films* court found significant that the defendants were part of the same swarm, trading an identical file with each other, as identified by the file's hash mark, which is an alphanumeric representation of a digital file. *See id.* In contrast, the defendants in *Hard Drive Productions* were not part of the same swarm. *See* 809 F. Supp. 2d at 1163.

Further, the quote that this Court points to is a quote taken from another case, *Laface Records, LLC. v. Does 1-38*, 2008 WL 544992, at *1 (E.D.N.C. Feb. 27, 2008). Judge Spero uses *Laface Records* in his discussion about the history of case law in addressing peer-to-peer technologies that predate BitTorrent technology. In earlier cases, like *Laface Records*, Does merely used the same peer-to-peer technology and sometimes had the same Internet Service

Providers. Also, in these earlier cases, like *Laface Records*, each defendant was accused of infringing a different set of copyrights. In other words, the defendants all downloaded/uploaded different copyrighted work — there were no facts suggesting that the claims of action arose out of the same transaction or occurrence.[1] Accordingly, the Court in *Laface Records* correctly held that the defendant's alleged infringements did not arise out of the same transaction or occurrence, or series of transactions or occurrences. There were no allegations that the copyright infringements arose out of the same series of transactions or occurrence or series of transactions or occurrences. Again, the facts of the case at bar, however, are different. Here, the defendants used the same technology (BitTorrent) to help each other (in a swarm) share the same copyrighted work – the same exact digital copy. The claims of action, in this case, arise out of the same series of transactions and occurrences.

Recently, a Court in New York approved joinder in a BitTorrent case. *See Digital Sin, Inc. v. Does 1-176*, 12-CV-00126, at *7-10 (AJN) (Opinion and Order dated January 30, 2012) (S.D.N.Y. Jan. 30, 2012). The *Digital Sin* court reviewed the same *Hard Drive Productions* case from Northern California and also reviewed a similar case from Southern District of New York, *Digiprotect* case, which severed the defendants based on improper joinder due to the fact that defendants were parts of different swarms and networks. *See id.* at *9. The *Digiprotect* court went on to note that any refiled pleading must be based on the allegation that connects the defendants to a same specific swarm. *See id.* The *Digital Sin* court adopted the *Digiprotect* standard, holding that "it is difficult to see how the sharing and downloading activity alleged in

---

[1] Attached as Exhibit A is the Complaint to *Laface Records*. In Exhibit A to its Complaint, the Court can see that Does in that case were accused of infringing copyrights, but did not necessary do so in the same transaction or occurrence or series thereof. Attached as Exhibit B to this response, is the technology declaration in *Hard Drive Productions*, which is in support of Plaintiff's application for early discovery. The technology declaration in support of Plaintiff's Complaint, "offers overwhelming evidence that the IP addresses were in fact gathered from multiple swarms." *Hard Drive Productions, Inc.*, 809 F. Supp. 2d at 1163. As Judge Spero noted, "users in different swarms have nothing in common other than downloading the same work, which as this court and others have noted is insufficient under our precedent." *Id.*

the Complaint – a series of individuals connecting either directly with each other or as part of a chain or "swarm" of connectivity designed to illegally copy and share the exact same copyrighted file – could not constitute a "series of transaction or occurrences" for purposes of Rule 20(a). *See id.* at *9-10.

Another recent case in Eastern District of Michigan went into a detailed analysis of proper joinder in BitTorrent infringement case and found joinder proper, especially in the early stages of litigation. *See Third Degree Films v. Does 1-36*, 11-cv-15200, at *8-20 (LJM) (Opinion and Order dated May 29, 2012) (E.D. Mich. May 29, 2012). Eastern District of Michigan court reviewed a recent decision from the Federal Circuit Court of Appeals discussing the issue of joinder in a patent litigation. In the case of *In re EMC Corp.*, 2012 WL 1563920 (Fed. Cir. May 4, 2012), Federal Circuit noted that "where defendants are alleged to be jointly liable . . . the transaction-or-occurrence test is always satisfied." *Id.* at *4. Federal Circuit went on to note that even independent actors may be properly joined under the transaction-or-occurrence test, which has been construed to require "logical relationship" between the defendants. *See id.* at *6. "The logical relationship test is satisfied if there is substantial evidentiary overlap in facts giving rise to the cause of action against each defendant. In other words, the defendants' allegedly infringing acts, which give rise to the individual claims of infringement, must share an aggregate of operative facts. *See id*.

In applying the test set out by the Federal Circuit, the Eastern District of Michigan court upheld joinder in the case, noting the unique nature of BitTorrent file sharing. *See Third Degree Films*, 11-cv-15200, at *16-17.

> [E]ach defendant allegedly participated in the same swarm for the same digital encoding of the Work and thereby jointly contributed to the illegal distribution of the Work to others. By undoubtedly uploading to other peers in the swarm, which enabled those peers to upload to still other peers, all 36 Doe Defendants jointly contributed to either growing the swarm or maintaining its existence. Each defendant contributed to an enterprise, the sole purpose of which was to distribute a particular version of Plaintiff's Work.

*See id*. at *17. Thus, the court concluded, trading of identical file in a single swarm goes

beyond mere committing the same type of violation in the same way.  *See id* at *13-14. The court found significant "that while a peer directly uploads to only a small number of peers, those peers in turn upload pieces to other peers that later join the swarm." *Id.* at *16. "Thus, a defendant's 'generation' of peers – peers that a defendant likely directly uploaded to – helped pass on pieces of the Work to the next 'generation' of active peers." *Id.* Therefore, the type of file sharing under BitTorrent protocol is more than just committing the exact same violation of the law in exactly the same way, instead it is a "shared, overlapping set of facts giving rise to Plaintiff's claims of infringement to make joinder presently proper." *See id.* at *17-18.

In determining whether the actions of doe defendants in a same swarm are logically related, the Court should look at the nature of the swarm. As the excerpt from BitTorrent, Inc.'s own website succinctly states, BitTorrent protocol's mentality is that of "Give and ye shall receive!" *See Declaration of John Nicolini.*  Every participant of the swarm downloading the movie presumably acts with the same motivation: to obtain a free copy of the copyrighted work. Every participant also understands that in order to make the BitTorrent system work and to have it be viable as a file sharing mechanism where free copies of various copyrighted works are available, they must do unto others as they would have others do to them, i.e. – redistribute copies of the movies they have downloaded.  Even if there is not an actual exchange of files between initial participants of the swarm and later participants, they all commit the same infringing activity: they illegally download and then redistribute that download to others. This is done with the purpose of keeping the swarm alive, so that copies of copyrighted works continue to be available for free downloads.

It should also be noted that United States Supreme Court has held that "the impulse is toward the broadest possible scope of action consistent with fairness to the parties and joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). As one of the drafters of the Federal Rules of Civil Procedure, Professor and Judge Charles E. Clark, noted, "if there is any reason why bringing in another

party or another claim might get matters settled faster, or more justly, then join them." 5 Charles A. Wright, *Joinder of Claims and Parties Under Modern Pleading Rules*, 36 Minn. L. Rev. 580, 632 (1952); *see also* James Wm. Moore et al., *Moore's Federal Practice*, § 20.02[1][a] (3d ed.) ("[J]oinder is based not on arcane historic formulations of legal relationships, but on common sense, fact-based considerations. . . . Many federal joinder rules permit addition of claims or parties based on transactional relatedness."); 6A Charles Alan Wright et al., *Federal Practice & Procedure: Civil 2d* § 1652 (1990) ("Like the compulsory counterclaim rule, the goal of the permissive joinder of parties rule–also centered on the 'transaction or occurrence'– is to prevent multiple lawsuits."); Robert G. Bone, *Mapping the Boundaries of a Dispute: Conceptions of Ideal Lawsuit Structure from the Field Code to the Federal Rules*, 89 Colum. L. Rev. 1, 80 (1989) ("The federal rules drafters . . . defined party structure primarily in terms of trial convenience, not in terms of right, and relied to a large extent on trial judge discretion to shape optimal lawsuit structure for each dispute.").

Decentralized nature of BitTorrent protocol and vested interest of each member of the swarm in contributing in a concerted effort to illegally reproduce and distribute copyrighted work creates the logical relationship between the series of activities by the members of the swarm and these doe defendants. Coupled with Supreme Court's strong encouragement of permissive joinder, *United Mine Workers of Am.*, 383 U.S. at 724, the concerted actions of these doe defendants constitute logically related series of transactions. *See Third Degree Films*, 11-cv-15200, at *17; *Liberty Media Holdings, LLC*, 1:11-cv-10802-WGY, at *12-15 (D.Mass. Oct. 31, 2011).

## 3.  Other considerations of why Joinder is proper.

Since this Court only asked plaintiff to respond to the transaction or occurrence is prong in Rule 20(a), Plaintiff will not go into depth nor exhaust the many other reasons why joinder should be maintained here. While there is a slew of other reasons for maintaining joinder,

Plaintiff will briefly list and discuss four.  If the court would like to hear more, plaintiff is happy to respond or appear for oral hearing.

### 3.1.    Joinder, at this stage of the proceedings, promotes judicial economy.

During the early stages of these types of copyright enforcement cases, the substantive issues to be dealt with are motions for early discovery, motions to quash, and motions to sever. These motions raise substantially the same issue for all these doe defendants. In fact, sometimes doe defendants file exactly the same motions using templates.  It is obvious that judicial economy is served by consolidating these cases as much as possible so that the Court does not have to rehear the same motions over and over again. *Cf. In re Adult Film Copyright Infringement Litigation*, 1:11-cv-07564 (S.D.N.Y. Mar. 13, 2012).

Also counseling in favor of joinder is the "interest of convenience" and "just, speedy, and inexpensive determination of the action." *See Lane v. Tschetter*, No. 05-1414, 2007 WL 2007493, at *7 (D.D.C. July 10, 2007). Severance in these types of copyright cases would become "significant obstacles in [Plaintiff's] efforts to protect [its] copyrights from illegal file-sharers and this would only needlessly delay [Plaintiff's] cases." *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F.Supp.2d 332, 344 (D.D.C. 2011).  Plaintiff would be forced to file separate lawsuits, pay separate filing fees, and issue separate subpoenas to ISPs for each individual infringer, all of which would work as substantial obstacle in enforcement of Plaintiff's copyright and would not "be in the 'interest of convenience and judicial economy,' or 'secure a just, speedy, and inexpensive determination of the action.'" *Id.* (citing *Lane*, 2007 WL 2007493, at *7).

### 3.2.    Some Defendants may not want to be severed.

Recently submitted by a Doe 120 in *Media Products, Inc. v. Does 1 - 120*, 3:12-cv-30100-,

D. Mass. 2012 (ECF No. 18), a case substantially similar to the one at bar, Doe argues against severance. Counsel for Doe was Counsel for a defendant in the famous Righthaven cases. Counsel's experience sheds unique insight into the practical realities when cases are not severed:

> The Righthaven cases filed in the U.S. District Courts for Nevada, Colorado, and South Carolina exemplify what happens if defendants are not joined together, and a Plaintiff simply monopolizes a docket. Rather than filing one Complaint joining the many defendants with causes of action based on virtually indistinguishable facts and law, Righthaven filed hundreds of similar infringement claims against numerous individual defendants, claiming that the defendants unlawfully copied hundreds of articles from various newspapers on websites throughout the country. In many of these suits, the only difference was the identity of the defendant. Many of Righthaven's defendants chose to settle rather than come up with the high costs of individualized litigation. As a result, many of the cases were not challenged in court, despite Righthaven's later-demonstrated lack of standing.
>
> Of those suits that did go before a judge, Righthaven did not win a single case. Every district where Righthaven brought suit determined that Righthaven lacked standing to bring copyright infringement claims. *See, e.g., Righthaven, LLC v. Hoehn*, 792 F.Supp. 2d 1138, 1147 (D.Nev. 2011); *Righthaven, LLC v. Wolf*, 813 F.Supp.2d 1265, 1273 (D.Colo. 2011); Righthav*en, LLC v. Democratic Underground*, LLC, 791 F.Supp.2d 968, 979 (D.Nev. 2011); *Righthaven, LLC v. Eiser*, 2012 WL 527569 (D.S.C. Feb. 16, 2012). However, the first Court to make this determination did not do so until after a year after Righthaven filed its first case. Had any of the cases been filed with joined Defendants, a comprehensive defense could have been mounted and the lack of standing issue would have surfaced sooner, at less of a cost to all the defendants involved. Even if this fundamental error were not discovered sooner in the litigation campaign, a joint defense may have resulted in the information resolving a large swath of disputes all at once, rather than piecemeal litigation of the same exact issue again and again. [ . . . ] That campaign would have come to an end far more efficiently, quickly, and cheaply had the cases not been firewalled from one another in hundreds of separate suits, where defense attorneys were not immediately and automatically notified of the various motions and other papers affecting identically situated defendants.
>
> In addition, because Righthaven filed individual complaints against each defendant, numerous districts were unnecessarily clogged with separate but indistinguishable suits, causing further delay in the court system – not only regarding the copyright claims, but at inconvenience to the court calendar as a whole. In total, Righthaven filed nearly 300 separate lawsuits against different defendants, all alleging similar copyright violation claims. The numerous suits created a logistical quagmire for the court system, but more problematically, worked an injustice on the defendants. Had the defendants been joined in fewer actions, the court calendar would have been much lighter. If the Plaintiff in this case followed Righthaven's example, it would have filed [the same amount of

actions as number Does] in this District over this movie alone – thus likely delaying [Does] ability to end the action, quickly or at all.

### 3.3.    Concerns of ill-litigation conduct are unfounded.

Counsel is concerned that the tales or speculations submitted by various defendants about coercing settlement based on the nature of the copyrighted content will persuade this court into severing Does.  Therefore, Plaintiff feels compelled to address this issue.

Counsel for the Plaintiff, here in Massachusetts, takes strong opposition to this claim. To assume or worry that Counsel in this District is using tactics such as these is wrong. Because, in fact, Counsel does completely opposite, and does so with pride. Every person that communicates with Counsel's law offices is treated with respect, and is treated above and beyond rules of Professional Responsibility as set out by the Supreme Judicial Court for Massachusetts. For example, Counsel for Plaintiff has stipulated on the record in another similar case that Counsel is willing to submit pleadings under seal in order to protect individuals privacy; many of the voluntary dismissals that are submitted to Court are settlements of zero dollars; this Counsel, unlike the majority of other Plaintiff attorneys, intends to litigate claims, as can be seen in a couple cases where waiver of summons have been sent out; and, this Counsel is willing to adjudicate a majority of these Defendants summary process or more efficient manner, like mediation or arbitration.

Another Court in this District noted there has been no report of Plaintiff's Counsel (who is the same Counsel here in a similar case) engaging in any unethical or coercive tactics, using the content-matter to persuade people into settling. It has even been stated on the record in another Court in a similar case during a hearing (transcript for that hearing is currently being worked on by stenographer) that this Counsel (who is the same Counsel here), as opposed to many others around the country, is one of the most ethical and best to deal with. Plaintiff can nearly guarantee that every defense counsel that has dealt with plaintiffs counsel would agree, even those who submit fierce motions against plaintiff.

Plaintiff is reminded of John Adams' defense of the six soldiers in the Boston Massacre, in December 1770, where he took the case despite the reputational blow to his career as a lawyer, and said, "Facts are stubborn things; and whatever may be our wishes, our inclinations, or the dictates of our passion, they cannot alter the state of facts and evidence." Here, the facts are that Doe defendants violated Plaintiff's rights, and federal rules allow for permissive joinder of these defendants. There are no facts, there are only speculations, that the Plaintiff is ill-ly using the Court system to fill its belly and that this Court cannot find ways to adjudicate each defendant in one civil action.  As a Court respectfully noted in it's denial of defendant's request to recuse a judge in *U.S. v. Bulger*, it is irresponsible for this Court to comply with requests where parties "have chosen to make untrue accusations in the possible hope of subverting that process, or at the very least, forcing a delay of a trial by injecting a diversionary issue into the proceedings." 1:99-cr-10371-RGS (D. Mass) at 9. Plaintiff feels this Court would agree that Defendants' requests to sever based on tall tales or misconduct should not be complied with.

### 3.4.    Piracy wins if this Court severs Defendants.

Joinder is an essential tool for the Plaintiff, and other copyright holders like the Plaintiff. The cost to file against each individual infringer is staggering, especially when much of the discovery about Does leads to a dead end.  Many times the contact information associated to the IP address is not helpful or is wrong. And many times the ISP does not have the data available. This Plaintiff, and many other copyright-holders, could not afford the cost filing against as many Does as joinder allows for.  And if Plaintiff can afford the cost, the cost will be trickled down. Demands for settlement or judgment may be much higher, resulting in fiercer litigation, and possibly more costs. There is no other adequate or feasible remedy at law to address one of the major issues of today: piracy.  Pirates may be encouraged to loot more works, if this Court severs the Does. Pirates would know that the cost for a copyright-holder to

litigate would be too high, therefore less chance of getting caught.  The potential effects of this court's decision go well beyond adult films.

## 4.  Conclusion.

Again, there are many other reasons beyond the four listed above besides the fact that the defendants are properly joined under Rule 20(a)(2)(A) of the Federal Rules of Civil Procedure.  Plaintiff is happy to respond to or appear in front of the Court to discuss them. Severing Defendants will cripple protection and enforcement of intellectual property.   Almost every court would agree that copyright enforcement is legitimate. But, only a few truly understand or care to do their best in good faith to redress the ever-increasing threats of piracy. Plaintiff prays that this Court sympathizes with the pains of piracy, promote and protect creative works like our Constitutional fathers intended, and approve jointer until facts suggest otherwise.

*          *          *

Dated: October 10, 2012,                              Respectfully submitted,

Marvin Cable, BBO#:  680968
Law Offices of Marvin Cable
P.O. Box 1630
Northampton, MA 01061
E: law@marvincable.com
P: (413) 268-6500
F: (888) 691-9850

Attorney for Plaintiff,
THIRD DEGREE FILMS

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2012, the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be served via first-class mail to those indicated as non-registered participants.

Marvin Cable, Esq.